**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **CASE. NO. 23-CR-133(RBW)** |
| | **:** | |
| | **:** | |
| **KYLE BLANCO,** | **:** | |
| **Defendant.** | **:** | |

**UNITED STATES' SENTENCING MEMORANDUM**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this memorandum to aid the Court in its sentencing proceeding. For the reasons detailed below, the Government requests that this Court impose a sentence of 78 months imprisonment, to be followed by 240 months of supervised release. The Government also seeks a Restitution Order in the amount of $5,000 for the minor victim in this case.

I.     **Background**

Law enforcement first learned of the Defendant's criminal conduct when a female college student, who also attended American University, reported to campus police that the Defendant propped his red Apple iPhone against a backpack lying on the floor of a co-ed bathroom, in an effort to record young women using the restroom. *See* Presentence Investigation Report (PSR) ¶ 16. Acting upon this information, on April 5, 2022, American University Police Officers executed a search warrant at the Defendant's dorm room. *Id.* at ¶ 17. The Defendant's Macbook Air was seized, and a review of this digital device revealed an image of a female inside a bathroom stall. The female can be seen in a squatted position, bending over, with her gray slacks pulled down to

her knees.[1]  *Id.* at ¶ 18.  The review of this digital device also revealed an image of a third young woman, who was also unknowingly and unwillingly recorded inside a bathroom stall at American University by the Defendant. *Id.* at ¶ 19.

Additionally, the Defendant's Apple MacBook Air contained files with names indicative of child sexual abuse material, including one titled "Sofia -14yo – Daddy Do You Like My Body -1.m4v."  *Id.* at ¶ 20.  An initial review of this digital device revealed numerous videos of minor females in various states of undress and fully nude.  *Id.*  Some of these videos depict the minors spreading their buttocks and/or exposing their genitals or pubic area for the camera.  *Id.*  In total, the Defendant's Apple Macbook Air contained over 1000 combined videos and images of child sexual abuse material, with creation dates indicating that the first of these images was saved to the device on April 10, 2013.  *Id.*

Inside the "Downloads" folder was a subfolder entitled "cami 8 anos[2] peru."  *Id.* at ¶ 21. The "cami 8 anos peru" folder contained 95 combined images and videos depicting child pornography.  *Id.*  A description of some of these images follows:

    a.  File Name: VID-20200313-WA0002.mp4; Created Date: 3/13/2020: A "selfie" style video depicting a prepubescent minor female, fully nude. The prepubescent female's genitals are the central focus of the video, and the child can be seen touching and spreading apart her genitalia throughout the video.

    b.  File Name: IMG-20200323-WA0026.jpg; Created Dated: 3/23/20: This image depicts a prepubescent female standing in front of the camera, digitally penetrating her vagina.

---

[1] This is not the same female who caught the Defendant attempting to record her inside the bathroom stall, and who reported the incident to campus police.
[2] Anos is Spanish and means years in English.

Other folders, including one titled "Pame 01," contained 414 images and videos depicting child pornography, showing the sexual exploitation and abuse of prepubescent female minors who appear to be under the age of 12.  *Id.* at ¶ 22.   As part of the investigation, these images depicting the sexual assault of young children were sent to the National Center for Missing and Exploited Children (NCMEC).  *Id.* at 24.  The Child Identification Report compiled by NCMEC listed 21 images and 17 videos depicting the sexual abuse of children whom law enforcement has identified.  *Id.*  Some of these videos show adult men orally and vaginally penetrating prepubescent girls.  *Id.*

Law enforcement also attempted to examine the red Apple iPhone that the Defendant used to record female victims inside bathrooms on the college campus.  *Id.* at ¶ 26.  However, the forensic extraction of this device revealed that it had been wiped remotely by the Defendant, on April 6, 2022, the day after it was seized by American University Police.  *Id.*

On August 17, 2023, the Defendant pled guilty to a two-count Information, charging him with Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(b) and Voyeurism in violation of 22 DC Code § 3531(b)(1) and (f)(1).  Id. at ¶ 4.  Sentencing is scheduled for February 2, 2024.

## II.     A Sentence of 78 Months, Followed by 240 Months Supervised Release, Accurately Reflects the 3553(a) Factors

In determining a reasonable sentence, the Court must consider the factors listed in 18 U.S.C. § 3553(a).[3]  These factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

---

[3] "Since the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L.Ed.2d 621 (2005), the Guidelines serve only an advisory function. *Id.* at 245, 125 S. Ct. 738. Nevertheless, even in a post-*Booker* world in which the Guidelines are not binding, the sentencing court 'must calculate and consider the applicable Guidelines range" as its starting point.

     (2) the need for the sentence imposed –
- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
- (B) to afford adequate deterrence to criminal conduct;
- (C) to protect the public from further crimes of the defendant; and
- (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and

     (3) the kinds of sentences available;

     (4) the applicable sentencing guidelines range for the offense;

     (5) pertinent policy statements issued by the U.S. Sentencing Commission;

     (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

     (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a); *see also United States v. Pyles*, No. CR 14-00006 (RJL), 2020 WL 376787, at *2 (D.D.C. Jan. 23, 2020); *United States v. Mitchell*, No. CR 05-00110 (EGS), 2019 WL 2647571, at *7 (D.D.C. June 27, 2019). A district court, however, "need not consider every § 3553(a) factor in every case." *In re Sealed Case*, 527 F.3d 188, 191 (D.C. Cir. 2008); *see also United States v. Fry*, 851 F.3d 1329, 1332 (D.C. Cir. 2017).[4]

**A. The Nature and Circumstances of the Offenses Justify a Lengthy Sentence**

     There is no doubt that the Defendant's criminal conduct is egregious. His offenses have been perpetrated against the most vulnerable members of our society - children. Children depicted in images and videos depicting their sexual abuse are traumatized and victimized in the worst way imaginable at the time the images were created, and they are re-victimized and re-traumatized each and every time an individual, like the Defendant, views the images for their

---

[4] As noted in the Government's Response and Objections to the PSR, the Government's Plea Agreement failed to apply the Specific Offense Characteristic found in USSG § 2G2.2(b)(4) for materials depicting sadistic or masochistic conduct. As a result, the Government's guidelines calculation in the Plea Agreement was incorrect. It is the Government's position that Probation's calculation of the Guidelines, including a Total Offense Level of 30 and a corresponding Guidelines range of 97-121 months, is correct. Nevertheless, the Government is recommending a sentence at the high end of the Guidelines range as originally contemplated by the Plea Agreement.

own sexual gratification.   As eloquently explained by the Sixth Circuit in a child pornography case:

> ...we have numerous victims in a case like this, not one victim. Every image of a child, every image of a non-adult engaged in any type of sexual activity or any type of pose without clothing or any type of exploitation constitutes an additional case of victimizing a child. Without a demand for that type of information and that type of viewing from persons like this defendant, we don't know how many child abuse cases we could prevent. And as long as there is a demand to purchase images of child pornography, there is going to be an unending stream of child abuse of…children who are forced into these roles.

> ...every image has a child who has been exploited and abused, and that is the concern I have. It is the concern that I have when people are engaged in serially doing this, the effect it has on children throughout the world and the effect it has on their future lives.

*See United States v. Miller*, 665 F.3d 114, 121-122 (6th Cir. 2011)(quoting the district court) (rejecting an attack on the child pornography sentencing guidelines and highlighting the grave harm caused to the victims depicted in child pornography images and the evidence that traffickers and possessors of child pornography are the impetus for the creation of more sexual abuse of minors).

This offender did more than just download and possess a large number of images depicting the sexual assault of very young children.  He also preyed upon innocent young women attending his University.  The Defendant invaded these victims' sense of safety and security when he secretly recorded them using the bathroom.  He prioritized his own sexual gratification over his fellow students right to feel safe in the place where they were living and attempting to better themselves by obtaining a college education.  The totality of this serious criminal conduct that warrants a sentence of 78 months imprisonment, to be followed by 240 months of supervised release.

**B. History and Characteristics of the Defendant**

This offender stands before the Court having advantages that most others did not.  By all accounts, the Defendant appears to have had a normal, happy childhood, and he enjoys familial support.  PSR ¶¶ 55-56; 58.  He also attended college at a prestigious University here in the District of Columbia.  *Id.* at ¶ 60.  Despite all of the support and opportunities, this Defendant has engaged in a disturbing pattern of accessing, downloading, viewing and possessing images and videos depicting the sexual abuse of children.  Even worse, he repeatedly sought out and sexually exploited his fellow students on multiple occasions.

The fact that this is an ongoing course of conduct is significant because it demonstrates that the Defendant did not suffer a temporary lapse in judgment, nor did he merely make one mistake in the case that has brought him before this Court.  It is also important to note that this Defendant never sought help for sexually deviant criminal behavior, nor did he voluntarily stop it.  He only temporarily stopped offending because he was caught by one of his victims, law enforcement acted swiftly in executing a search warrant at his residence, and he left American University to reside in Florida with his parents.

The Government acknowledges that the Defendant has no prior criminal record.  However, his lack of a criminal history was accounted for when determining the applicable Guidelines range and, in and of itself, should not support the basis for a downward departure.  Furthermore, as this Court is well-aware, the online sexual exploitation of children and, to a large extent voyeurism, are crimes that are committed in secret.  This secrecy, combined with the overwhelming presence of digital devices and the near universal access to the Internet, makes detection of these criminal offenses difficult.  In the present case, the Defendant was able to secretly record at least two other victims before he was caught by a fellow student.  Had it not

been for that brave student alerting law enforcement, the Defendant's child pornography offenses, which forensic evidence indicates had been occurring for several years, would have gone undetected.

When fashioning the appropriate sentence for child exploitation offenses, the absence of an arrest record should be viewed with caution, because it is well-known that children often do not disclose sexual abuse, and that these types of crimes are wildly underreported. *See United States v. Gregory Todd Numan*, 3:160cr000065(TMB)(DAK)(February 26, 2018:  Expert Testimony of Clinical Psychologist Darrell Turner).  In *Numan*, Dr. Turner provided expert testimony to the Court to explain why a reliance on the lack of prior criminal history of an offender charged with sexual offenses committed against children does not serve as a reliable indicator of their future risk for reoffending.  As explained by Dr. Turner:

> "One of the main problems is the fact that these offenses are among the most undetected offenses that there are. This is not like bank robbery or murder, where it's generally assumed and expected that it's going to be detected and reported. We know from research that about only about five percent of sexual offenses against children are ever reported.
>
> Of those, of that five percent, about another five percent result in a conviction. So we're talking about an exponentially small number of offenses that are reported and accounted for. So it's sort of akin to saying there were only four drunk people in New Orleans in Mardi Gras this year because there were only four arrests for public intoxication, and it's not a good representation of what's actually going on out there. So to say it without the qualifier that, hey, this is a gross underestimate, but you know, so far, this is what we've been able to find, I think, is misleading and very, very dangerous."

at pages 22-23.  *See also* K. London, M. Bruck, S. J. Ceci & D. W. Shuman, *Disclosure of Child Sexual Abuse: What Does the Research Tell Us About the Ways Children Tell?*, 11 PSYCHOLOGY, PUB. POL'Y & L. 1, 194-226 (American Psychological Association, 2005)(finding

in a study of adult retrospective victim studies about child sex abuse, approximately 60 – 70% of adults sexually abused as children did not recall disclosing the abuse during childhood); *See also* D. W. Smith, E. J. Letourneau, B. E. Saunders, D. G. Kilkpatrick, H. S. Resnick & C. L. Best, *Delay in Disclosure of Childhood Rape: Results from a National Survey*, 24 CHILD ABUSE & NEGLECT 2, 273-87 (2000)(the results of the study found that only 12% of child rape victims' assaults were reported to law enforcement authorities.).  As such, the fact that the Defendant lacks a criminal record, given the ways in which these types of crimes are committed and the reluctance and inability of the victims to disclose abuse and exploitation that they may not be aware of, should be given less weight by the Court when determining the appropriate sentence, given the nature of the offenses for which he was convicted.

**C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and Provide Just Punishment for the Offense**

This factor is known as the "just desserts" concept, answering the need for retribution so that the punishment fits the crime and the defendant is punished justly.  *See United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010).  The *Irey* court cited the Senate Report regarding this provision:

> This purpose--essentially the "just desserts" concept--should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct.  From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense.  (quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59).

> *Id.*

The sexual exploitation of children, including the viewing and possession of child sexual abuse material, has devastating consequences for the children depicted in these images and videos. Once they find their way onto the Internet, images and videos depicting the sexual abuse of a child

8

will circulate in perpetuity because individuals make the repetitive and purposeful decision to collect, save, and trade them for their own sexual gratification.

Furthermore, as noted above, consumers of child pornography, like the Defendant, create a market and demand for the production of these images and videos, which depict the sexual abuse and exploitation of real children. These consumers therefore contribute to the cycle of abuse and are in part responsible for the harm suffered by children used to produce the images and videos in their collections. *See United States v. Goff,* 501 F.3d 250, 259-260 (3d Cir. 2007) ("Children are exploited, molested, and raped for the prurient pleasure of [defendant] and others who support suppliers of child pornography"). In *United States v. Goldberg,* the Seventh Circuit stated:

> The district judge was influenced by the erroneous belief that a sentence affects only the life of the criminal and not the lives of his victims. Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded-both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. [Citations omitted].

491 F.3d 668, 672 (7th Cir. 2007).

Thus, even if consumers of child pornography do not themselves molest children, their actions contribute to the abuse of children. The Court need only review the Victim Impact Statements from the children depicted in the images that this Defendant collected to understand the devastating impact that the Defendant's actions have caused these children and the adults who love them. Just as damaging was the effect that the Defendant's actions had on the women whom he victimized at American University. In one of the victim's Impact Statement, she details the devastating trauma and ongoing anxiety that she has suffered as a result of the Defendant's surreptitious recording of her in an environment in which she was supposed to be

and feel safe. Therefore, with respect to 18 U.S.C. § 3553(a)(2)(A), a sentence of 78 months imprisonment, followed by a lengthy period of supervised release, would provide "just punishment" for the Defendant's offenses, promote respect for federal and D.C. law, and reflect the serious nature of his offenses.

**D.  The Need for the Sentence Imposed to Afford Adequate Deterrence**

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence.  *See United States v. Fry*, 851 F.3d 1329, 1332 (D.C. Cir. 2017) (the sentence would deter Fry and "others who may be inclined in doing similar kinds of things."); *see also United States v. Ferber*, 458 U.S. 747, 760 (1982) ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product"); *Osbourne v. Ohio*, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand"); *United States v. Goff*, 501 F.3d 250, 261 (3rd Cir. 2007) ("Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing."); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) ("Transporting and receiving child pornography increases market demand.  The greater concern under the Guidelines is for the welfare of these exploited children.  The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it.").

18 U.S.C. § 3553(a)(2)(B) dictates that a sentence of 78 months is appropriate because the Defendant's sentence should be lengthy in order to deter the criminal conduct of others.  As stated in *Goldberg*, "[s]entences influence behavior, or so at least Congress thought when in 18

U.S.C. § 3553(a) it made deterrence a statutory sentencing factor.  The logic of deterrence suggests that the lighter the punishment for trafficking in child pornography, the greater the customer demand for it and so the more will be produced."  491 F.3d at 672.  *See also Goff*, 501 F.3d at 261 (stating in child pornography possession case that "deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing").

A lengthy sentence here is also warranted in light of the Defendant's behavior during the very short period of time he was on supervised release pending trial in this matter.  On May 31, 2023, the Court imposed specialized conditions of this offender's supervised release in light of the nature of the charges he faced.  One of these conditions was that the Defendant not possess any unmonitored electronic devices and that he comply with all monitoring requirements as imposed by the Pretrial Services Agency (PSA).  *See* ECF Doc. No. 9.  On June 6, 2023, PSA in the Middle District of Florida conducted a home assessment and discovered that, a mere three days after appearing before this Court and being advised of the conditions of his supervised release, the Defendant downloaded the Tor Project on a laptop he was sharing with his mother. *Id.*  This is significant because the Tor Project is an application that prevents the tracking of Internet activity, and allows individuals to visit various websites and services anonymously.  *Id.* Therefore, it seems clear that the Defendant installed this program to circumvent PSA's monitoring software and to allow him to continue to engage in the behavior that led to his criminal convictions undetected.  Similarly, the Defendant also deleted the browser history from his cellular telephone, preventing the supervising agency from determining what material(s) he had been searching for and accessing.   As a result, this Court has reason to question whether this Defendant can comply with any conditions of release that this Court should impose at the time of

Sentencing.  Therefore, a lengthier sentence and period of supervised release is necessary afford adequate deterrence to this Defendant, and to other like-minded offenders who would seek to sexually exploit children using digital devices and the Internet.

**E. The Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant**

A sentence of 78 months is necessary in order to protect the public from further crimes of this Defendant.  As detailed above, the sexual exploitation of children and child pornography offenses present a serious danger to the community which results in severe mental, emotional, and physical trauma to the countless number of children who are victimized by offenders like the Defendant and others with a demonstrated sexual interest in children.

When fashioning a sentence, Courts should consider that sex offenders have a high rate of recidivism.  *See Lombard v. United States*, 44 F. Supp. 3d 14, 26 (D.D.C. 2014) (noting that the lower court's concerns about recidivism was supported by substantial authority (citing *Smith v. Doe,* 538 U.S. 84, 103, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) ("The risk of recidivism posed by sex offenders is frightening and high.") (citations omitted); *McKune v. Lile,* 536 U.S. 24, 33, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002) (noting that "[w]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault"); *United States v. Irey,* 612 F.3d 1160, 1214 (11th Cir.2010) ("[T]he threat of recidivism by a pedophile who has sexually abused a child is appalling.") (citation and quotation marks omitted); *United States v. Allison,* 447 F.3d 402, 405–06 (5th Cir.2006) ("Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders.")); *see also United States v. Allison*, 447 F.3d 402, 405-406 (5th Cir. 2006) (Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders). Indeed, As Judge Posner recently wrote:

> We need evidence-driven law just as we need evidence-driven medicine. Statistical analysis of sex crimes has shown that the best predictor of recidivism is not deportment at an interview but sexual interest in children. R. Karl Hanson, Kelley E. Morton & Andrew J.R. Harris, "Sexual Offender Recidivism Risk: What We Know and What We Need to Know," 989 Annals of the N.Y. Academy of Sciences 154, 157 (2003) (tab.1). Some studies show a high rate of recidivism among pedophilic sex offenders generally, ranging from 10 percent to 50 percent. Ryan C.W. Hall & Richard C.W. Hall, "A Profile of Pedophilia: Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues," 82 Mayo Clinic Proceedings 457, 467 (2007). Another study found that only 6.8 percent of consumers of child pornography had been charged with a new child-pornography offense within 4 years but that the percentage rose to 9.5 percent within 6 years. Angela W. Eke, Michael C. Seto & Jennette Williams, "Examining the Criminal History and Future Offending of Child Pornography Offenders: An Extended Prospective Follow-up Study," Law & Human Behavior, Nov. 19, 2010 (tab.1), www.springerlink.com/content/h4616862621x8616/ (visited June 23, 2011).

*United States v. Garthus*, 552 F.3d 715, 720 (7th Cir. 2011).

It should also be noted that this Defendant's criminal offenses include behavior and conduct that the Sentencing Commission deems to be "aggravating factors" that courts can consider at sentencing when determining the level of danger a particular offender poses to the community. *See* Federal Sentencing of Child Pornography Non-Production Offenses (https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-non-production-offenses). These aggravating factors include: the content of the offender's child pornography collection and nature of the offender's collecting behavior; (2) the offender's degree of involvement with other offenders, particularly in an Internet community devoted to child pornography and child sexual exploitation; and (3) the offender's engagement in sexually abusive or exploitative conduct in addition to the child pornography offense. The Defendant stands before the Court having sought out, downloaded, viewed, and possessed images and videos depicting the sexual abuse of very young children. His conduct of surreptitiously recording unsuspecting women, in various states of undress in situations in which they were entitled to privacy and respect,

is certainly sexually abusive or exploitive conduct in addition to his child pornography offenses. As such, it is clear that this Defendant engaged in even worse conduct than what Guideline §2G2.2 considers and attempts to adequately address. Arguably, a sentence even higher than what the current Guidelines contemplate would be a just sentence that is reasonable, but no greater than necessary, to achieve the multiple purposes of sentencing.

When considering the need to protect the public from future crimes of this offender, the Court should be gravely concerned that the Defendant has been assessed as posing an "above-average likelihood of recidivism." *See* PsychoSexual Evaluation and Risk Assessment Report (Report) at page 7. When interviewed by Dr. Flower, the Defendant reported a longstanding history of voyeuristic interests, admitting that he masturbated to voyeuristic pornography and fantasies. *Id.* at page 5. Similarly, he admitted to searching out child pornography for several years prior to the offenses of conviction, and to have been sexually aroused by child sexual abuse images depicting children as young as ten to eleven. *Id.* When administered the Static-99R, one of the most well-researched tools for the calculating the risk for recidivism posed by sexual offenders, the Defendant's score of 5 puts him at the risk level IVa, which means that 85% of offenders score lower when administered this instrument. *Id.* at page 7. He scored similarly on the Stable-2007, which is another risk assessment tool designed to focus on risk facts associated with sexual reoffending. *Id.* Therefore, his risk to reoffend has been assessed to be far higher than the majority of others who commit similar offenses.

At the time of Sentencing, the Defendant will only be 21 years old. As Dr. Flowers notes in his Report, young offenders are more likely to recidivate than older offenders. *Id.* at page 8. Thus, his young age increases his recidivism risk; a factor which serves as the basis for the Government's request for such a lengthy period of supervised release. This offender appears to

suffer from paraphilic disorders, including a Voyeuristic Disorder, which caused him to act out on his sexual urges against nonconsenting persons.  *Id.*  Furthermore, the Defendant has admitted to being sexually aroused by viewing images of children as young as 10.  These risk factors are exacerbated by the fact that the Defendant has difficulty resisting the urge to view pornography.  *Id.* at page 9.  In fact, his compulsion was so strong that it led him to violate his conditions of pretrial release by downloading Tor in order to gain access to this type of material, as detailed above. *Id.* at pages 5, 9.  These factors all increase his risk to commit future offenses against vulnerable and unsuspecting members of a community.  Therefore, a sentence of 78 months, followed by 240 months of supervised release, is necessary to protect the public from future crimes of this Defendant.

## F.  The Need to Avoid Unwarranted Sentence Disparities among Defendants with Similar Records Who Have been Found Guilty of Similar Conduct

Section 3553(a)(6) directs courts to consider avoiding *unwarranted* disparities among defendants "with similar records who have been found guilty of similar conduct." It "does not require the district court to avoid sentencing disparities between defendants who might not be similarly situated." *United States v. Mattea*, 895 F.3d 762, 768 (D.C. Cir. 2018) (quoting *United States v. Guillermo Balleza*, 613 F.3d 432, 435 (5th Cir. 2010).  When an offense is uniquely serious, courts will consider the need to impose "stiffer sentences" that "justif[y] the risk of potential disparities." *United States v. Jones*, 846 F.3d 366, 372 (D.C. Cir. 2017); *see also United States v. Accardi*, 669 F.3d 340, 346 (D.C. Cir. 2012) (concluding that a within-Guidelines sentence for a child-pornography offense did not produce an unwarranted disparity when the images distributed by the defendant "were much more aggressive and troubling than the images distributed by other offenders" who received lesser sentences).

15

It is true that in many cases Judges in this District have departed from the Guidelines range in child exploitation cases, particularly in cases involving the Possession rather than the Distribution of Child Pornography.  However, as detailed above, this Defendant's child pornography offenses spanned the course of several years.  Furthermore, he was actively seeking out and victimizing women in the community.  Therefore, he is not similarly situated to the vast majority of offenders who come before the Court, charged with possessing child pornography on a single date, who are not charged with other criminal offenses.  Therefore, a sentence of 78 months would not create an unwarranted sentencing disparity, because it accurately reflects the egregious nature of this Defendant's conduct and takes into account the other counts for which he stands convicted.

### III.   <u>The Victims are Entitled to Restitution</u>

In child pornography cases, restitution is mandatory to any person "harmed as a result of" a defendant's crime pursuant to 18 U.S.C. § 2259. *See* 18 U.S.C. § 2259(a), (c); *see also United States v. Monzel*, 930 F.3d 470, 476 (D.C. Cir. 2019); *United States v. Hite*, 113 F. Supp. 3d 91, 94 (D.D.C. 2015) ("Pursuant to 18 U.S.C. § 2259, the victims of certain federal crimes, including possession of child pornography, are entitled to mandatory restitution."). Restitution includes "the full amount of the victim's losses," which may include any costs incurred by the victim for:

(A) Medical services relating to physical, psychiatric, or psychological care;
(B) Physical and occupational therapy or rehabilitation;
(C) Necessary transportation, temporary housing, and child care expenses;
(D) Lost income;
(E) Attorneys' fees, as well as other costs incurred; and
(F) Any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(a), (b)(3); *see also United States v. Hite*, 113 F. Supp. 3d 91, 94 (D.D.C. 2015).

Here, the offense of conviction is a child pornography trafficking offense, as defined in 18 U.S.C. § 2259(c)(3). Therefore, the court shall determine the full amount of the victims losses and shall order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000. 18 U.S.C. § 2259(b)(2).

In *Paroline v. United States*, 134 S. Ct. 1740 (April 23, 2014), the United States Supreme Court faced a circuit split over the interpretation of 18 U.S.C. § 2259, specifically over "how to determine the amount of restitution a possessor of child pornography must pay to the victim whose childhood abuse appears in the pornographic materials possessed." *Paroline*, 134 S. Ct. at 1716. In *Paroline*, the defendant possessed two images of the victim who was seeking restitution. The Court's answer to this question involved three steps.

First, *Paroline* held that, because the statute defined a "victim" as someone "harmed as a result" of the offense, restitution under § 2259 was proper "only to the extent the defendant's offense proximately caused a victim's losses." *Id*. at 1722. Second, the Court held that "proximate cause" under § 2259 did not require strict but-for causation. *Id*. at 1726-27. Recognizing that under the circumstances of most child pornography possession cases – where losses resulted from harm caused by the trafficking of a victim's images by numerous "geographically and temporally distant offenders acting independently, and with whom the defendant had no contact," *id*. at 1725, - the Court held:

> In this special context, where it can be shown that a defendant possessed a victim's images and that a victim had outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses.

*Id*. at 1727. The Court made clear that, where the victim's losses are "the product of the acts of thousands of offenders," a restitution order should not be "too severe" but must not be merely "a token or nominal amount." *Id.* That is, in part, because a restitution order under § 2259 serves "twin goals," the first being to "help[] the victim achieve eventual restitution for all her child-pornography losses" and second to "impress[] upon offenders the fact that child pornography crimes, even simple possession, affect real victims." *Id.*

Third, the Court provided sentencing courts the following guidance for how to determine the proper amount of restitution under this standard. *Id*. The Court noted that a sentencing court's goal should be to assess "the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses," taking into account any "available evidence." *Id*. at 1727-28. The Court emphasized that there is no "precise mathematical inquiry" governing this determination and that district courts must exercise "discretion and sound judgment" in fashioning restitution awards. *Id*. at 1728. The Court suggested several factors to be considered, including: (1) the number of defendants convicted of possessing the victim's images; (2) the number of future offenders likely to be caught and convicted; (3) whether the defendant had any role in the initial production of the images; (4) whether the defendant reproduced or distributed the images; (5) how many images the defendant possessed; and (6) "other facts relevant to the defendant's relative causal role." *Id*. "These factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders. They should rather serve as rough guideposts for determining an amount that fits the offense." *Id*.

Congress has since amended Section 2259 to both codify *Paroline*'s basic approach and to set a restitution floor of $3,000. *See* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299, 132 Stat. 4383 (2018).  As detailed the Restitution

Request materials submitted to this Court under seal, a victim depicted in some of the images and videos the Defendant accessed, viewed, and possessed is seeking restitution for costs associated with attending psychotherapy and/or counseling, medications, loss of income, loss of housing, and for various medical expenses. The following victim, Pia, in the known series Sweet White Sugar has submitted a Restitution Request to the Court. For the reasons set forth above, as well as those contained in the Restitution Request materials previously submitted to the Court, the Government respectfully requests that the Court shape an appropriate restitution award of at least $5,000 paid to the victim by the Defendant.

## IV.   Conclusion

The Government submits that a sentence of 78 months, followed by 240 months supervised release, is a reasonable sentence in this case and is "sufficient, but not greater than necessary to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

Dated:  January 16, 2023                    Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

  /s/   *Amy E. Larson*
Amy E. Larson, N.Y. Bar Number 4108221
Paul Courtney
Assistant United States Attorneys
601 D Street, N.W.
Washington, D.C. 20530